Billy Fred Murphy, Jr. was indicted and convicted for robbery in the first degree in violation of Alabama Code 1975, §13A-8-41. Murphy and Timothy Stephen Dunbar robbed Marilyn's Trading Post in Auburn, Alabama, and severely beat James D. Wallace who worked there. Murphy was sentenced to life imprisonment and ordered to pay restitution to Wallace for the injuries he sustained. Two issues are raised on appeal.
 I
This first issue is governed by the principle that, where the voluntariness inquiry presents conflicting evidence, great weight must be given the trial judge's finding of the voluntariness of a confession. Moore v. State, 415 So.2d 1210,1214 (Ala.Cr.App.), cert. denied, Moore v. Alabama,459 U.S. 1041, 103 S.Ct. 459, 74 L.Ed.2d 610 (1982). "When the trial court has determined the voluntariness of the alleged confession, such holding is entitled to great weight on appeal and will not be disturbed unless it appears to be contrary to the great weight of evidence and manifestly wrong." Harris v.State, 280 Ala. 468, 470-71, 195 So.2d 521 (1967).
Although there was Murphy's own testimony that he was under the influence of drugs at the time he confessed, there was the testimony of a police officer to the effect that Murphy was coherent, rational, understandable, and sober. Although there was evidence that Murphy experienced a "fit" upon his arrest and within hours of his confession, there was also testimony that this bizarre behavior was faked in an effort to resist arrest and attempt an escape. "The mere fact that the defendant had taken drugs sometime before he made a statement does not automatically render a confession involuntary." Byrd v. State,421 So.2d 1344, 1348 (Ala.Cr.App. 1982).
That Murphy was a nineteen-year-old with a seventh grade education who could write but could not read or spell "too good" are merely factors to be taken into consideration in examining the totality of the circumstances to determine voluntariness. "The age and education of the defendant are merely factors to consider in determining voluntariness."Moore, 415 So.2d at 1214.
Murphy's testimony that he did not remember being advised of his constitutional rights or even making a statement should be considered in determining his mental competency to make a statement. However, in making the voluntariness determination, the trial judge is entitled to consider the defendant's credibility in deciding the weight to be given his testimony.Player v. State, 421 So.2d 1338, 1343 (Ala.Cr.App. 1982). "Absent clear error, the . . . court's credibility choices at suppression hearings are binding on this court." United Statesv. Aldridge, 719 F.2d 368, 373 (11th Cir. 1983). "Mere emotionalism and confusion do not dictate a finding of mental incompetency or insanity." Sullivan v. Alabama, 666 F.2d 478,483 (11th Cir. 1982).
There was no evidence that Murphy or his father requested an attorney before the statement was taken.
Our review of the record supports the trial judge's finding that the confession was freely and voluntarily given.
 II
The pistol used in the robbery and discovered in Murphy's room was properly admitted into evidence even though it is clear that the police had no consent to search Murphy's room.
Murphy was arrested at his father's house where he lived. Murphy refused to give any consent to search but his father allowed the police to search everywhere except Murphy's room.
After Murphy was arrested and handcuffed, the police seized the shoes he was wearing after observing blood on them. Before leaving the house, Murphy requested permission to go to his room and get another pair of shoes. Officers followed *Page 763 
Murphy into the room and observed the pistol lying in plain view on a crib mattress.
This situation is not unusual.
 "If the defendant is placed under arrest at a particular place in the premises, even at the front door, the circumstances may be such that he will be allowed to move about the premises prior to departure for the police station. Although this may occur for other reasons as well, it occurs with greatest frequency when the defendant needs to change his clothes or put on additional clothing before departing. Often the defendant will ask that he be allowed to do this, although on some occasions it appears that the police have been the motivating force in causing the defendant to seek out other clothing. In either event, the courts have had little hesitancy in holding admissible evidence discovered by the police as a consequence." 2 W. LaFave, Search and Seizure § 6.4 (a) (1978).
"The `plain view' exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be."Washington v. Chrisman, 455 U.S. 1, 5-6, 102 S.Ct. 812, 816,70 L.Ed.2d 778 (1982). Here, the officer had placed Murphy under lawful arrest and therefore was authorized to accompany him to his room for the purpose of obtaining his shoes. "The officer had a right to remain literally at . . . [Murphy's] elbow at all times; nothing in the Fourth Amendment is to the contrary."Washington, 455 U.S. at 6, 102 S.Ct. at 816.
 "Every arrest must be presumed to present a risk of danger to the arresting officer. Cf. United States v. Robinson, supra [414 U.S. 218] at 234 n. 5, 94 S.Ct. [467] at 476 n. 5 [38 L.Ed.2d 427 (1973)]. There is no way for an officer to predict reliably how a particular subject will react to arrest or the degree of the potential danger. Moreover, the possibility that an arrested person will attempt to escape if not properly supervised is obvious. . . .
 "We hold, therefore, that it is not `unreasonable' under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person, as his judgment dictates, following the arrest. The officer's need to ensure his own safety — as well as the integrity of the arrest — is compelling. Such surveillance is not an impermissible invasion of the privacy or personal liberty of an individual who has been arrested." Washington, 455 U.S. at 7, 102 S.Ct. at 817.
Murphy received a fair trial. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.