* Note from the reporter of decisions: The certiorari petition was filed under the name "David Huey Lane."
The appellant, David Lane, was convicted of receiving stolen property in the first degree, a violation of § 13A-8-17, Ala. Code 1975, and escape in the third degree, a violation of §13A-10-33, Ala. Code 1975. He was sentenced to eight years' imprisonment for the receipt of stolen property conviction and two years' imprisonment for the escape in the third degree conviction.
The record reveals that on July 6, 1993, several items were stolen from Robert Summerford's premises, including a four-wheel, all terrain vehicle ("four-wheeler"), a microwave oven, and two stereo speakers. (R. 120-22.) Summerford provided the police with a description of the items. Three days after the property was stolen, the appellant sold Rita Hubbard and her husband, Charles Hubbard, a four-wheeler for $500. (R. 249.) An officer took Charles Hubbard to the police station for questioning regarding the stolen four-wheeler. (R. 155.) When Rita Hubbard learned that her husband had been taken in for questioning, she notified the police and identified the appellant as the person who had sold them the four-wheeler.
Officers went to the house where the appellant and his brother, Charles Barbie, lived, to interview the appellant. (R. 155.) While at the appellant's house, officers saw a microwave on the kitchen counter; the microwave appeared to match the description that Summerford had provided of the microwave that had been stolen from his house. (R. 156.) A check of the serial numbers confirmed that the microwave belonged to Summerford. One of the officers followed the appellant into his bedroom, where the officer saw two stereo speakers; the speakers fit the description of the speakers stolen from Summerford. (R. 162.) The officers read the appellant and Barbie their rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), and took them into custody. (R. 190-91, 177, 187.) The appellant attempted to escape but was apprehended by officers in a wooded area several miles from the town hall (R. 210.) Officers attempted to interview the appellant, but he refused to sign a form saying that he understood his Miranda rights and he asserted his right to counsel. (R. 277-28.) Lane did not give a statement. After a jury trial, the appellant was found guilty of receiving stolen property in the first degree and escape in the third degree.
The appellant, through new counsel, filed a motion for a new trial on November 12, 1996, arguing that the verdict was contrary to the law or to the weight of the evidence and that his trial counsel had been ineffective. The appellant filed an amendment to his motion for a new trial, specifying that his trial counsel had been ineffective for failing to object to questions about his failure to sign a form *Page 208 
saying he understood his Miranda rights and his request for counsel. The trial court denied the motion for a new trial.
The appellant contends that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and, thus, that the trial court improperly denied his motion for a new trial. He argues that his trial counsel's failure to object at trial to testimony regarding his refusal to sign a Miranda rights form, to testimony regarding his assertion of his right to counsel, and to the fact that he refused to give a statement during interrogation violated his Fifth and Sixth Amendment rights.
The appellant argues that the following testimony elicited by the prosecution from Officer James Necaise, Chief of Police of Falkville, was objectionable:
 "Q. Okay. The Miranda rights were substantially the same that were already read to him [Lane]?
"A. Yes, sir.
"Q. What happened after that?
 "A. He said he refused to sign anything . . . so then I called Lieutenant Miller back to the office. I read them to him again straight from the Miranda rights paper. And in front of Lieutenant Miller, he refused to sign again. Then I said, 'Okay,' and we continued on with the questioning.
 "Q. Well, at some point, did you conclude the interview?
 "A. Oh, yeah. I had tried to interview him on several occasions."
(R. 278.)
Officer Necaise testified as to Lane's request for counsel during his testimony:
 "Q. All right. And what issue came up after you placed the defendant under arrest?
"A. He asked about his bond.
"Q. Okay.
 "A. I said I would have to make contact with the judge about that . . . He [Lane] then said, 'Well, then, that's fine. I want to talk to a lawyer anyway.'
 "Q. At that point, did you do anything about a bond?
 "A. Yeah. What I had done since he asked for his attorney, everything had stopped. It shuts down right there. Either you have to arrest an individual or you have to let him go, but you can't talk to him anymore. That's the bottom line about what you're there for.
 "Q. You stopped asking him questions when he asked for a lawyer?
"A. Yes, sir, I did."
(R. 280-81.)
Officer Necaise also testified as to the appellant's refusing to give a statement:
 "A. If [Lane] were to talk to me, which he did not, he had no statement to give whatsoever."
(R. 290.)
Officer Necaise again referred to the appellant's request for counsel later in his testimony:
 "Q. At what point in time during the conversation that you were having with him did he use the phone?
 "A. Right after he — I told him he was under arrest and he asked for a lawyer."
(R. 297.) Defense counsel did not object to any of the testimony set forth above.
 "Under the standards enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by this Court in Ex parte Baldwin, 456 So.2d 129 (Ala. 1984), a two-pronged test must be met before a claim of ineffective assistance of counsel is proven. A convicted defendant, in order to secure a reversal of his conviction, must show: (1) that counsel's performance was deficient, which requires a showing that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced [the] defendant, which requires a showing that a different outcome of the trial probably would have resulted but for counsel's allegedly ineffective performance. Strickland, supra, 466 U.S. at 687, 104 S.Ct. at 2064. *Page 209 
 "To meet the first prong of the test, the petitioner must show that his counsel's representation fell below an objective standard of reasonableness. The performance inquiry must be whether counsel's assistance was reasonable, considering all the circumstances. Strickland, supra, 466 U.S. at 688, 104 S.Ct. at 2065."
Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987).
 " '[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' [Strickland v. Washington,] 466 U.S. [668] at 689, 104 S.Ct. [2052] at 2065 [(1984)]. Because of the diverse methodologies employed by defense counsel and the broad range of opinion about how to best address a particular situation, the burden is upon the defendant to overcome the presumption that the challenged action constitutes 'sound trial strategy.' "
Ex parte Womack, 541 So.2d 47, 66 (Ala. 1988).
The appellant claims that his trial counsel's failure to object was not trial strategy, but rather, was due to counsel's ignorance of the law. In support of his claim, the appellant cites the following statement by trial counsel outside the presence of the jury: "I don't know if there's anything — I don't know if [the testimony that appellant requested an attorney during interrogation is] objectionable anyway. I mean, if he was under the Miranda warning, anything he said could come in." (R. 230.)
This court has held that "[o]bjections are a matter of trial strategy, and an appellant must overcome the presumption that 'conduct falls within the wide range of reasonable professional assistance,' that is, the presumption that the challenged action 'might be considered sound trial strategy.' " Moore v.State, 659 So.2d 205, 209 (Ala.Cr.App. 1994), citingStrickland, 466 U.S. at 687-88, 104 S.Ct. at 2064-65. Here, there is no indication that trial counsel's failure to object was a sound tactical decision. It is also significant to note that at the hearing on the motion for a new trial, counsel failed to provide sufficient evidence that his failure to object to the prosecution's repeated references to the defendant's invocation of his right to remain silent was well founded and was based on good professional judgment. After reviewing the trial record and the transcript from the hearing on the motion for a new trial, we conclude that trial counsel's failure to object did not fall within the wide range of reasonable professional assistance. Although the appellant has met the first prong of the Strickland test, we cannot say that trial counsel's judgment amounted to ineffective assistance of counsel, because the second prong of Strickland was not met.
The second prong of the Strickland test requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Holland v. State,654 So.2d 77, 80 (Ala.Cr.App. 1994). The United States Supreme Court stated in Strickland, that "with regard to the required showing of prejudice, . . . a reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."466 U.S. at 669, 104 S.Ct. at 2055-56. " 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment.' " Ex parte Lawley, 512 So.2d 1370, 1372, 1373
(Ala. 1987) (citing Strickland, supra, 466 U.S. at 691,104 S.Ct. at 2066-67).
The appellant failed to meet his burden of proving that there was a reasonable probability that, but for counsel's failure to object, the outcome of his trial would have been different.See Hubbard v. State, 584 So.2d 895, 912 (Ala.Cr.App. 1991)cert. denied, Hubbard v. Alabama, 502 U.S. 1041, 112 S.Ct. 896,116 L.Ed.2d 798 (1992). We are mindful of the well settled principle forbidding the prosecution to use evidence of defendant's post-arrest, post-Miranda warning silence for substantive purposes or as evidence of the defendant's guilt. However, here, the prosecutor's repeated introduction of evidence of the appellant's post-arrest silence did not prejudice the appellant because it did *Page 210 
not undermine confidence in the outcome of the proceeding.
There was overwhelming evidence of the appellant's guilt. Although there was no admitted evidence that the appellant stole the four-wheeler, microwave oven, and two stereo speakers, there was ample circumstantial evidence presented at trial tending to inculpate the appellant. The record reveals that the victim's brother saw the appellant near a truck at the victim's house on the day the items were stolen; three days after the property was stolen, the appellant sold a four-wheeler to the Hubbards that matched a description of the four-wheeler stolen from the victim; and police officers found the microwave oven and two stereo speakers at the appellant's home. Secondly, the appellant took the stand and testified that he had purchased the microwave, the stereo speakers, and the four-wheeler at a local trade show. However, he failed to produce any witnesses to corroborate the story and several witnesses for the prosecution contradicted his testimony. Thirdly, the appellant attempted to escape after he was taken into custody. The jury was charged that flight could be used as evidence of a consciousness of guilt, and the jury concluded that the evidence presented at trial established escape in the third degree. (R. 208.) Finally, the fact that the appellant had a constitutional right not to give a statement was brought out several times during trial. (R. 280, 342, 344.)
"It is well settled that '[a] decision on a motion for a new trial rests largely within the discretion of the trial court, and [that] in reviewing such a decision this court will indulge every presumption in favor of the correctness thereof.' . . . 'A trial judge's denial of a motion for new trial will not be disturbed [on appeal] in the absence of a showing of [an] abuse of discretion.' " Sistrunk v. State, 630 So.2d 147, 154
(Ala.Cr.App. 1993) (citing Brownlee v. State, 545 So.2d 151,164 (Ala.Cr.App. 1988) aff'd Ex parte Brownlee, 545 So.2d 166
(Ala. 1989), cert. denied, Brownlee v. Alabama, 493 U.S. 874,110 S.Ct. 208, 107 L.Ed.2d 161 (1989)). The facts of this case make it clear that even assuming counsel's conduct was unreasonable, in light of all the evidence, the appellant suffered no prejudice that warrants setting aside his conviction and sentence. Thus, the trial judge did not err in denying the appellant's motion for a new trial; and the judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.